**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

PATAGONIA FOOD GROUP, LLC

    Plaintiff,

    v.

DONALD J. TRUMP, President of the United States, in his official capacity; THE UNITED STATES OF AMERICA; KRISTI NOEM, Secretary of the Department of Homeland Security, in her official capacity; UNITED STATES DEPARTMENT OF  HOMELAND SECURITY; SCOTT BESSENT, Secretary of the Treasury, in his official capacity; UNITED STATES DEPARTMENT OF TREASURY; HOWARD W. LUTNICK, Secretary of Commerce, in his official capacity; UNITED STATES DEPARTMENT OF COMMERCE; RODNEY S. SCOTT, Commissioner of Customs & Border Protection, in his official capacity; UNITED STATES CUSTOMS AND BORDER PROTECTION; JAMIESON GREER, U.S. Trade Representative, in his official capacity; and OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE

    Defendants.

COURT NO.  1:26-cv-02851

**COMPLAINT**

Plaintiff Patagonia Food Group, LLC ("Plaintiff" or "Patagonia Food Group"), by and through its undersigned counsel, brings this civil action against Defendants and alleges as follows:

**INTRODUCTION**

1.    Patagonia Food Group seeks a refund of import duties paid under a series of 2025 Executive Orders, invoked by President Donald J. Trump of the United States of America, under the International Emergency Economic Powers Act ("IEEPA") (these duties under the IEEPA are hereinafter referred to as "IEEPA Tariffs").  This action is necessary to preserve Patagonia Food Group's right to a refund due to the fact that IEEPA Tariffs were held unlawful by the United States Supreme Court.  *Learning Res., Inc. v. Trump*, 607 U.S. ___ (2026), Slip. Op. at 16

1

(affirming *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025)) (hereinafter "*Learning Resources*").

2.      In *Learning Resources*, the United States Supreme Court held that the import duties imposed under the IEEPA are unlawful. *id*.

3.      Patagonia Food Group seeks for itself an order requiring Defendants to refund all IEEPA Tariffs paid by Plaintiff, as well as any such IEEPA Tariffs that Plaintiff pays during the pendency of this action, with interest.

4.      Patagonia Food Group additionally seeks that all IEEPA Tariffs that it paid that have already liquidated or liquidate during the pendency of this action, be reliquidation such that Plaintiff receives a refund of all IEEPA Tariffs paid with interest.

## PARTIES

5.      Plaintiff, Patagonia Food Group, LLC, is a limited liability company, established in Delaware.

6.      Plaintiff imports produce, such as strawberries, raspberries, pineapples, mangoes, bananas, dragon fruits, plantains, grapes, and coconuts, from Chile, Costa Rica, Ecuador, Mexico, Peru, and Vietnam — countries of origin affected by the IEEPA tariffs.

7.      Defendant Donald J. Trump is the President of the United States and is sued in his official capacity.

8.      Defendant the United States of America received the IEEPA Tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

9.      Defendant Kristi Noem was the Secretary of the United States Department of Homeland Security and oversaw the collection of the IEEPA Tariffs during her time as Secretary and is sued in her official capacity.

10. Defendant United States Department of Homeland Security ("DHS") is a federal agency, responsible, for, among other things, providing legally binding rules on the classification of imports.

11. Defendant Scott Bessent is the Secretary of the United States Department of Treasury and is sued in his official capacity.

12. Defendant United States Department of the Treasury ("Treasury") is responsible for processing tariff proceeds, including the IEEPA Tariffs.

13. Defendant Howard Lutnick is the Secretary of Commerce and is sued in his official capacity.

14. Defendant United States Department of Commerce is responsible for enforcing U.S. trade laws and ensuring compliance with international agreements which include the IEEPA Tariffs.

15. Defendant Rodney S. Scott is Commissioner of United States Customs and Border Protection and is being sued in his official capacity.

16. Defendant United States Customs and Border Protection ("CBP") is a federal agency and a component of the DHS, responsible for, among other things, securing ports of entry and collecting tariffs on imported goods, and imposing civil and criminal penalties for failure to correctly classify goods and pay duties.

17. Defendant Jamieson Greer is the United States Trade Representative and is being sued in his official capacity.

18. Defendant Office of the United States Trade Representative is the federal agency responsible for developing United States trade policy.

**JURISDICTION**

19.     The Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1581(i) and 28 U.S.C. § 2631(i). *See V.O.S. Selections, Inc.,* 149 F4th at 1328-30.

20.     The Court has the same powers at law, in equity, and as conferred by statute as a United States District Court. 28 U.S.C. § 1585. In a civil action under 28 U.S.C. § 1581, the Court can enter a money judgment against the United States and can order any other appropriate civil relief, including declaratory judgments, injunctions, orders of remand, and writs of mandamus or prohibition. 28 U.S.C. §§ 2643(a)(1), (c)(1).

**STANDING**

21.     Plaintiff has Article III standing because it is the importer of record for goods imported into the United States of America from the Republic of Chile ("Chile"), the Republic of Costa Rica ("Costa Rica"), the Republic of Ecuador ("Ecuador"), the United Mexican States ("Mexico"), the Republic of Peru ("Peru"), and the Socialist Republic of Viet Nam ("Vietnam"), countries all subject to IEEPA Tariffs as implemented by the United States government.

22.     Plaintiff has paid IEEPA Tariffs to the United States and has suffered injury caused by the IEEPA Tariffs. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) ("If a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III."); *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 599 (2007) ("being forced to pay" money to the government "causes a real and immediate economic injury").

23.     An order from this Court requiring a full refund of the IEEPA Tariffs paid, with interest, would redress these injuries by reversing the unlawful costs imposed on Plaintiff.

## BACKGROUND & FACTUAL ALLEGATIONS

### I.    Executive Orders Resulting in IEEPA Tariffs Impacting Plaintiff

24.    Since January 2025, President Trump, pursuant to a series of Executive Orders asserting authority under the International Emergency Economic Powers Act, 50 U.S.C. §§ 1701 *et seq.*, imposed investigations and increased tariffs on imports from various countries, including Chile, Costa Rica, Ecuador, Mexico, Peru, and Vietnam, the countries of origin for some of Patagonia Food Group's imports.  President Trump asserted that the IEEPA authorized the imposition of tariffs on these imports based on declared national emergencies, including those related to trade deficits.

25.    On April 2, 2025, Executive Order 14257, Fed. Reg. 15041 (*Regulating Imports with a Reciprocal Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trade Deficits*) ("Reciprocal Tariff Order")[1], imposed an *ad valorem* duty on all trading partners except as otherwise provided within the order, establishing a 10% baseline tariff.  President Trump declared a national emergency, under the IEEPA, claiming that foreign countries engaged in "unfair trade practices" resulting in an "unusual and extraordinary threat to the national security and economy of the United States."

### A.  Chile

26.    Chile was not listed in Annex I to the Reciprocal Tariff Order, and therefore imports from Chile were subject to the 10% global *ad valorem* reciprocal IEEPA tariff.  *See* Reciprocal Tariff Order § 3(a); Annex I.

---

[1] Exec. Order No. 14257, *Regulating Imports With a Reciprocal Tariff to Rectify Trade Practices that Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed. Reg. 15041 (Apr. 2, 2025).

27.    Subsequent Executive Orders did not materially change the treatment of Chile-origin goods, which remained subject to the baseline tariff.

28.    Patagonia Foods' imports from Chile were assessed and paid IEEPA tariffs, including tariffs under the Harmonized Tariff Schedule of the United States ("HTS") subheading 9903.01.25, pursuant to the Reciprocal Tariff Order.

### B. Costa Rica

29.    Costa Rica was not listed in Annex I to the Reciprocal Tariff Order, and therefore imports from Costa Rica were subject to the 10% global *ad valorem* baseline reciprocal IEEPA tariff imposed by that order. *See* Reciprocal Tariff Order § 3(a); Annex I.

30.    On July 31, 2025, Executive Order 14326, Fed. Reg. 37963 (*Further Modifying the Reciprocal Tariff Rates*) ("Country-Specific Tariff Order")[2], imposed additional *ad valorem* duties on all trading partners except as otherwise provided within the order, establishing an additional 10% *ad valorem* duty pursuant to the Reciprocal Tariff Order. In Annex I of the executive order, imports from Costa Rica received an additional 15% *ad valorem* duty on goods.

31.    Patagonia Foods' imports from Costa Rica were assessed and paid IEEPA tariffs, including tariffs under HTS subheading 9903.01.25, pursuant to the Reciprocal Tariff Order.

### C. Ecuador

32.    Ecuador was not listed in Annex I to the Reciprocal Tariff Order, and therefore imports from Ecuador were subject to the 10% global *ad valorem* baseline reciprocal IEEPA tariff imposed by that order. *See* Reciprocal Tariff Order § 3(a); Annex I.

---

[2] Exec. Order No. 14326, *Further Modifying the Reciprocal Tariff Rates,* 90 Fed. Reg. 37963 (July 31, 2025).

6

33.    On July 31, 2025, the Country-Specific Tariff Order[3], imposed additional *ad valorem* duties on all trading partners except as otherwise provided within the order, establishing an additional 10% *ad valorem* duty pursuant to the Reciprocal Tariff Order.  In Annex I of the executive order, imports from Ecuador received an additional 15% *ad valorem* duty on goods.

34.    Patagonia Foods' imports from Ecuador were assessed and paid IEEPA tariffs, including tariffs under HTS subheadings 9903.01.25 and 9903.02.17, pursuant to the Reciprocal Tariff Order and the Country-Specific Tariff Order.

### D.  Peru

35.    Peru was not listed in Annex I to the Reciprocal Tariff Order, and therefore imports from Peru were subject to the 10% global *ad valorem* baseline reciprocal IEEPA tariff imposed by that order. *See* Reciprocal Tariff Order § 3(a); Annex I.

36.    Subsequent Executive Orders did not materially change the treatment of Peru - origin goods, which remained subject to the baseline tariff.

37.    Patagonia Foods' imports from Peru were assessed and paid IEEPA tariffs, including tariffs under HTS subheading 9903.01.25, pursuant to the Reciprocal Tariff Order.

### E.  Mexico

38.    On February 1, 2025, Executive Order 14194, Fed. Reg. 9117 (*Imposing Duties To Address the Situation at Our Southern Border* ("Mexico Tariff Order"))[4], imposed an additional 25% IEEPA tariff on the import of goods from Mexico. The President's claim of emergency powers was based on "the grave threat to the United States posed by the influx of illegal aliens and illicit drugs into the United States" and "the failure of Mexico to arrest, seize, detain, or otherwise

---

[3] Exec. Order No. 14326, *Further Modifying the Reciprocal Tariff Rates,* 90 Fed. Reg. 37963 (July 31, 2025).
[4] Exec. Order No. 14194, *Imposing Duties To Address the Situation at Our Southern Border*, 90 Fed. Reg. 9117 (Feb. 1, 2025).

intercept [drug trafficking organizations], other drug and human traffickers, criminals at large, and illicit drugs." *Id*. at 9118.

39.     Patagonia Foods' imports from Mexico were assessed and paid IEEPA tariffs, including tariffs under HTS subheading 9903.01.01, pursuant to the Mexico Tariff Order.

### F.  Vietnam

40.     Vietnam was expressly listed in Annex I to the Reciprocal Tariff Order, and therefore imports from Vietnam were subject to a country-specific reciprocal tariff rate of 46% imposed by that order. *See* Annex I to the Reciprocal Tariff Order.  President Trump declared a national emergency, under the IEEPA, claiming that foreign countries engaged in "unfair trade practices" resulting in an "unusual and extraordinary threat to the national security and economy of the United States."

41.     On July 31, 2025, the Country-Specific Tariff Order, imposed additional *ad valorem* duties on all trading partners except as otherwise provided within the order, establishing an additional 10% *ad valorem* duty pursuant to the Reciprocal Tariff Order. In Annex I of the executive order, imports from Vietnam received an additional 20% *ad valorem* duty on goods. President Trump declared a national emergency, under the IEEPA, claiming that foreign countries engaged in "unfair trade practices" resulting in an "unusual and extraordinary threat to the national security and economy of the United States."

42. On September 5, 2025, Executive Order 14346, Fed. Reg. 43737 (*Modifying the Scope of Reciprocal Tariffs and Establishing Procedures for Implementing Trade and Security Agreements),* modified the Reciprocal Tariff Order and the Country-Specific Tariff Order, and under Annex III, Vietnam's IEEPA-based reciprocal tariff was maintained at 20%.

43.     Patagonia Foods' imports from Vietnam were assessed and paid IEEPA tariffs, including tariffs under HTS subheadings 9903.01.25 and 9903.02.69.

## II.        The United States Supreme Court Held IEEPA Tariffs Unlawful

44.        On April 14, 2025, multiple companies filed an action in this Court challenging the President's authority to issue various tariff-related Executive Orders under IEEPA and the Constitution. *See V.O.S. Selections v. Trump*, No. 25-066 (Ct. Int'l Trade 2025).  This Court held that IEEPA Tariffs were unlawful, which was affirmed by the Federal Circuit and United States Supreme Court (the "Supreme Court"). *See Learning Res., Inc. v. Trump*, 607 U.S. ___ (2026), Slip. Op. at 20 (affirming *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025)).

45.        On February 20, 2026, post the Supreme Court's ruling, President Trump issued Executive Order 14389, Fed. Reg. 9437 (*Ending Certain Tariff Actions*)[5], which declared the IEEPA Tariffs no longer in effect.

46.        On February 22, 2026, CBP issued guidance through the Cargo Systems Messaging Service ("CSMS") informing importers that IEEPA Tariffs would no longer be collected.

## III.        Liquidation of Entries Subject to the IEEPA Tariffs

47.        Under 19 C.F.R. § 159.1, "liquidation" refers to the final calculation or determination of duties regarding consumption or drawback entries.

48.        Upon importation into the United States, the importer of record pays estimated taxes, tariffs, and fees based on an importer's declaration. *See* 19 U.S.C. § 1484.

49.        CBP will review the declaration and goods being imported and establish a final appraisement by verifying the classification, value, and tariff rate of the item(s). *See* 19 U.S.C. § 1500.

---

[5] Exec. Order 14389, *Ending Certain Tariff Actions,* 91 Fed. Reg. 9437 (Feb. 20, 2026).

50.    After determining the final duties owed, CBP will liquidate the entry within 314 days after the initial entry of goods into the United States, meaning that the duties owed becomes legally binding on the importer. *See* 19 U.S.C. § 1504(b).

51.    Liquidation starts a 180-day window during which importers can file an administrative protest to challenge the duty rates or request a refund if they believe the assessment was wrong. *See* 19 U.S.C. § 1514(c)(3). CBP has the authority to re-liquidate (or correct) an entry within 90 days of the original liquidation date. *See* 19 U.S.C. § 1501.

52.    This Court has the authority to order reliquidation of liquidated entries. *AGS Co. Automative Solutions v. United States*, Court No. 25-00255, Slip Op. 25-154, at 6 (Ct. Int'l Trade Dec. 15, 2025) (recognizing that liquidation does not, by itself, foreclose the Court's ability to order appropriate relief, including reliquidation, where duties were unlawfully imposed) (citing In re Section 301 Cases, 524 F. Supp. 3d 1355, 1365–66 (Ct. Int'l Trade 2021)).; *see also Atmus Filtration, Inc. v. United States*, Court No. 26-01259, Order at 1–3 (Ct. Int'l Trade Mar. 4, 2026) (USCIT ordered CBP to liquidate all unliquidated entries and reliquidate all liquidated entries for which liquidation is not yet final).

53.    To the extent entries have liquidated prior to or during the pendency of this action, Plaintiff requests that this Court order reliquidation of all entries subject to IEEPA Tariffs and a refund, with interest, of such IEEPA Tariffs paid.

**IV.    Plaintiff's Importation of Goods Under the IEEPA Tariffs**

54.    Between March 2025 to February 2026, Patagonia Food Group imported goods from Chile, Costa Rica, Ecuador, Mexico, Peru, and Vietnam, all of which were subject to IEEPA Tariffs.

55.    The imported goods are produce, such as strawberries, raspberries, pineapples, mangoes, bananas, dragon fruits, plantains, grapes, and coconuts.

56.    Patagonia Food Group's imports were subject to the IEEPA Tariffs as outlined above.

57.    In total, Patagonia Food Group has paid over US $690,000.00 in tariffs on these imports in excess of what it would have paid absent the IEEPA Tariffs pursuant to the IEEPA Tariffs.

58.    Due to unexpected costs, Patagonia Food Group has been directly harmed by the IEEPA Tariffs.

<u>**STATEMENT OF CLAIM**</u>

<u>**COUNT I**</u>

**IEEPA TARIFFS ARE UNLAWFUL**

59.    Plaintiff realleges and incorporates herein by reference the foregoing Paragraphs of the Complaint as if fully set forth herein.

60.    In *Learning Resources*, the Supreme Court considered challenges to the President's authority to impose tariffs under IEEPA and this Court's ruling and the Federal Circuit's affirmance of this Court's opinion in *V.O.S. Selections, Inc. v. Donald J. Trump*, 772 F.Supp. 3d. 1350, 1383 (Ct. Int'l Trade 2025), aff'd, 149 F.4th 1312 (Fed. Cir. 2025) (holding that the President exceeded his authority under IEEPA, 50 U.S.C. § 1701 et seq.). *Learning Res., Inc. v. Trump*, 607 U.S. ___ (2026).

61.    The Supreme Court held that IEEPA Tariffs are unlawful because the IEEPA does not authorize the President to impose tariffs, *Learning Res., Inc. v. Trump*, 607 U.S. ___ (2026), Slip. Op. at 16 (affirming *V.O.S. Selections, Inc. v. Trump*, 149 F.4th 1312 (Fed. Cir. 2025)).

62.    Plaintiff is entitled to an order directing Defendants to refund all IEEPA duties paid, plus interest, on all relevant entries whether liquidated or unliquidated.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

a)    Declare that the IEEPA grants the President no authority to impose tariffs;

b)    Declare that the IEEPA Tariffs are unlawful;

c)    Order CBP to liquidate without IEEPA tariffs any of Plaintiff's entries that have not yet liquidated and reliquidate without IEEPA tariffs any of Plaintiff's liquidated entries for which Plaintiff paid IEEPA Tariffs;

d)    Order Defendants to provide a refund within 45-days of this order of the amount of IEEPA Tariffs paid by Plaintiff, and collected by Defendants, including pre- and post-judgment interest, on all relevant entries whether liquidated or unliquidated; and

e)    Grant such further relief as this Court deems proper.

DATED: April 21, 2026                    BUCHALTER LLP

By: _____
Sonja Arndt Johnson
BUCHALTER LLP
425 Market Street, Suite 2900
San Francisco, CA 94105
Telephone: (415) 227-0900
sarndtjohnson@buchalter.com

Seth Kincaid Trimble (*pro hac forthcoming*)
3475 Piedmont Road NE, Suite 1100
Atlanta, GA 30305
Telephone: (404) 832-7532
strimble@buchalter.com

*Counsel for Plaintiff*
PATAGONIA FOOD GROUP, LLC

12